v. Davis Mr. Levin, you may proceed. You have a motion, I believe, to allow the admission of the record. Is that correct? The state has a motion to cite additional authority. Okay. Do you have any objection to it? To the extent that it may conflict with my concession argument, I object just for that reason. Okay. We'll take the matter with the case then. Okay. Thank you. Catherine Zinov is not present. She is unavailable for today's date. She's read the briefs. She will listen to the oral argument and will confer in a final disposition. You may proceed, Mr. Levin. Yes, Your Honor. Thank you very much. The first issue, as I mentioned a second ago, is I'd like to briefly address this issue of concession. Because I am going to address Rule 701. But the brief of the state did not address 701A, B, or C in any way in its brief. And I've cited two cases, people v. Hayes and Deborah S., in my reply brief. And that the failure to respond to an argument is tantamount to a concession. So I would argue that the arguments I made with regard to 701 have been conceded. As to the merits, the first issue I want to address today is Rule 701. 701 consists of three components, 701A, 701B, and 701C. And I've argued that the state was required to comply with all three and has actually failed to comply with each of those components. So I'll address each in turn. The first one I'll address is 701A. 701A, that is the rule states what I'm basically arguing is a general principle. The lay opinion testimony of the police officers is inadmissible. They gave their opinion that the defendant was intoxicated and was unfit to drive. They gave that opinion. It should have been inadmissible and not used in the case. And now I will address 701A in particular. All right. If that's how you're going to establish that it was inadmissible by addressing 701A? And B and C. All right. All three. And I believe the state has to comply with all three. It's not an either-or proposition, but it's an and. The rule actually uses the word and, the conjunctive word. So if the state meets A and B but doesn't meet C, then the evidence is inadmissible. But I believe the state has failed to meet all three, A, B, and C. You can go ahead. I just was going to ask you a question, but if you're going to keep going, I will preserve my question. Yes, Your Honor. So 701A says opinion must be rationally based on the perception of the witness. And in particular, Commander Blauer has testified that he gave an opinion that the defendant was intoxicated based on his performance of the field sobriety test. But Commander Blauer has actually admitted in his testimony that he did not see, he did not conduct a test, and he did not see the defendant's performance on the test. I thought he saw some, but not all. I believe it was a pretrial matter where he said that he actually didn't see it at all. And I did cite that in my brief. But B, that is in A. He didn't see the whole thing. I think that's undisputed. But there is a... I thought what he did is, and if I may, I want to make sure I have the record correct, he observed portions of the defendant performing as he was providing officer safety and dealing with the woman involved, Ms. Wild. He noticed that Lorden had to repeatedly tell the defendant to stop moving his head from side to side while performing the HGM. He observed the defendant say, I'm not moving my head, while simultaneously moving his head. And he also saw something with the one-leg stand. So he didn't see all three, but he did see two of the three. So how can we say that he could not come to some sort of an opinion on that basis? Well, I have in my brief. His testimony is at page 400. He was not the officer to administer the test. He did not see the identity of the driver of the vehicle. He did not see an exit. Because he was coming from the other end.  Yeah. So, yes, I, there was a quote that I made, which I'm not able to find right now, but I, Commander Blauers did not, either he didn't see the whole thing, and I think there's. No, he admits he did not see the whole thing. Okay. I mean, that's true. And then there's a very telling admission in a pretrial statement that was offered where it does support that. But I'll move on. And the officers, all three officers, did not actually see the defendant driving the car, either. So to render an opinion, was unfit to drive, was intoxicated. When not one of the three officers saw him drive the car, I also believe that that comes with 701A as well. But was an officer, or I think he was the sergeant, or he was one of the command people, Blauers, he was, he entered at the other end of this parkway or park, and his job was to make sure there was nobody else in the area. So he made sure, he did a search or a random look at the area to make sure there was nobody else there who could affect officer safety. So we have two people that we know are involved in this, Ms. Wild, and the defendant who walked, who walks away from the car, says he has the keys in his pocket, I think he said. Right. So what, and he, at that point, I don't believe, and he said, I was driving her home. He doesn't mention that he was being driven home. Does he? He, well, the testimony presented in his defense case was that an individual that he was friends with by the name of K.C. was actually the driver and drove onto the island. I'm just, but she wasn't, where did she go? Nobody, I mean, she said she took off when the police came. Well, how did she get out of there? Because we had a policeman at one end and a policeman at the other end. How did she get out? Well, my issue here is on 701. Right, but you're saying that that is part of the fact that they could not, they had not formed a rational decision based upon the evidence. They could not find a third person on that island. Well, I think the officers actually, Lorden and Potthoff, it was based on beliefs. They did not actually, Lorden said he didn't actually see the defendant driving, and Potthoff said the same thing. In his testimony, he did not see the driver. So I don't think he's qualified to render an opinion that he was driving under the influence. My opinion is he's driving under the influence. I don't think he's qualified to render that opinion unless it's based on facts that he could perceive. I think what the state is doing is making inference upon inference here to get to that conclusion that my client was under the, to get to their conclusion or opinion that the client was under the influence of alcohol. He testified, this is Officer Lorden, who came in the same, allegedly the same way that the defendant's vehicle did. He testified that he met or he encountered a woman walking rapidly away from the vehicle. He later identified the woman as Jessica Wyatt. He testified that he saw the vehicle's headlights turn off and watched a man exit from the driver's door. And then Lorden informed that person that the park was closed at night and asked him what he was doing. What do you think I'm doing? At that time, then Blowers arrived, and now we have Lorden, Blowers, Wilde, and defendant. So that's, and then there's later some evidence about the keys, I believe. So we have some evidence, circumstantial maybe, but we see him exiting from the driver's side of the car. Yes, we do have circumstantial evidence. But I get back against a 701A, and that rule doesn't allow a witness to testify to give an opinion or conclusion based on circumstantial evidence. They could give an opinion or conclusion based on things they observed through the senses, like through sight, that they actually did see. And so I don't think they can make an inference upon inference. It's not like a reasonable doubt issue, because with a reasonable doubt issue, you can rely on circumstantial evidence. But, you know, the state can address the issue, of course, but there's no case law that I know that allows 701A to be, for a witness to make an opinion and pile on inference and inference to render an opinion. It has to be gleaned through the senses, through sight. And no officer testified they actually observed the defendant driver. Now, the officers can testify to all the facts Your Honor mentioned. I'm not objecting that they can't testify to those facts, and the jury would come up with a conclusion based on the circumstantial evidence. But the officer can't testify this person was driving under the influence because they didn't actually see him driving. So I don't think they can make that opinion under A. So I'd like to proceed to B. Are you saying no factual scenario will ever suffice if the witness has not seen the car being driven by the defendant? I'm not sure if there's any factual scenario, but applying the rule, and I can't make a broad assertion. My argument is narrowly based on the facts. But under the case law, which I read carefully, it's whether the witness can make an opinion under A if they actually obtain the information upon which the opinion is formed based on information they obtained directly through the senses, not through inference upon inference, not through circumstantial evidence, but something they saw, something they heard, and based it on that. But they can't say he was driving under the influence or they never saw him drive. Lawyers can't say I'm finding that he, you know, he's unfit to drive because of the performance on the test when he didn't actually see all the tests at least. So I'm going to move on to B. And B says that, so the state has to comply with A and B. And late opinion testimony is admissible where the facts cannot be described in such a way as to enable the fact finder to form an opinion or conclusion. Well, in this case, the officers can testify as to facts. There's nothing complicated or difficult about it. They can testify to coordination, balance, inability to follow instructions, unusual answers to questions. And all that evidence would be admissible. But saying, giving an opinion that he's intoxicated and that he's unfit to drive is not permitted under B because the jury is in just as good a position to make that judgment based on what the officers observed. The jury is in just as good a position to make that judgment as the witnesses are. So if the court finds that it's inadmissible under B, then we don't even have to look at A because the state has to comply with all three components. So it's not admissible under B. I cited Peeble v. Jackson in a 2017 case. A paramedic gave an opinion that the defendant was having a seizure, but the court found that that was inadmissible. I'm sorry? I thought he was not having a seizure. Sorry? Yes. Excuse me. Probably not having a search nor a seizure. It's true. Yes. I stand corrected. And the court found that that was inadmissible under B. So in this case, the officers did not have any difficulty describing the facts. They described the facts in an understandable manner. Therefore, an opinion doesn't assist or help the jury under B. So in this case, if we follow Jackson, if the officers or one of the two officers on the scene, I guess there were three ultimately, but one of the two officers that were talking about Flowers and Lord and said, yeah, I don't think he was under the influence of alcohol, you would object to that? Probably not. Well, it might come in under a different rule. Okay. It might be an admission, but what we're talking about in this case is 701B, so I think there might be a different issue involved. But he's still doing the same thing that happened to Jackson. The paramedic said, you know, and the reason this is relevant in Jackson is because he said that whatever happened was because of the seizure he was having, and the paramedic says, no, he wasn't having a seizure. I did not see him have a seizure. It's my opinion he didn't have a seizure. Well, if we're going to look at 701B and one officer says, yes, he was under the influence, and the other said, no, he wasn't, isn't that the same issue here, that he's giving an opinion based upon his observations? Well, again, getting to B, those facts that are cited are present in the case because all officers said he was intoxicated. But I look at B again and ask the question, did this opinion evidence, did this assist or help to try or affect in any way? And state, you know, it didn't. It didn't help to try or affect in any way because we don't have a situation where there are facts that are not being described, facts that are being described in an un-understandable manner and the jury really needs the assistance of an opinion. The officers can testify to all the facts Your Honor mentioned. Sorry. All the facts that Your Honor mentioned and coordination and balance, certainly the officers can testify to that, but they can't say, give an opinion that he's intoxicated unless that would assist and try or affect. Let's talk a little bit about C since time gets limited. Yes, thank you, Your Honor. C is very important, it's a very important part of my argument because lay opinion must under C cannot be based on scientific, technical, or specialized knowledge. And the officers did that here. They used the word clue. Yes. Where, how is that scientific or technical? What is that, you know, I had never heard it used in a scientific way or a technical way. I've heard it used in games. No, I don't even know what clue meant until I had to look it up. It's a complicated term. It is a scientific term. I think it's, I'm a lawyer, I didn't know what it meant. I had to look it up. It's not part of the general language. Clues, pass, fail. The officer said you have to have four clues out of six on an HGM for him not to pass. But I don't know what that means. We haven't been shown that that's a reliable methodology. When a jury hears that kind of thing, they say, oh, this is very scientific, this is very technical, the officer is kind of making sense, I'm going to believe that testimony. But, you know, standing back from that, what does all that mean? I don't know that that's reliable when he says four out of six is a fail and then walk and turn two out of eight. Why two out of eight? Why can't it be six out of eight? But two out of eight fails on the walk and turn. Then two out of three on the one-legged test. He wasn't recognized as an expert. This evidence did come under 702. We don't have a reliable methodology. I've cited a lot of cases to the effect that this gives the jury, this gives the testimony an aura of unearned credibility, as used in one of the cases that I've cited. And so this kind of evidence is not admissible under C, to say give all that scientific and technical. This is not what a common sense, common person would understand. I had to look it up. I had to understand how to educate myself on the science behind it. Did Officer Lorden testify that he had done some training with the National Safety Transportation, or whatever, the entity that establishes these rules for walking? He may have mentioned something, but he wasn't submitted under 702. He wasn't recognized as an expert. He didn't explain why this methodology is recognized or believable or reliable is the word. Aren't those things that are supposed to come out in cross-examination? I think that the State has to meet a certain threshold, and they have to show it. Did they ask to have his testimony admitted as an expert? Well, the defense did not object, so I'm appraising it. It's not material whether you objected or not. The question is if they didn't present him as an expert, then why do they have to establish the elements of an expert when they're not presenting him as an expert? They don't. It's inadmissible under A. And then I asked you because you were using the terms in a negative sense. That would suggest that maybe the negative aspects of it should be brought up on cross-examination. No, I do believe that the State would be required to meet a certain threshold, and there is error here, and I argue plain error. First of all, I'm a plain error. The evidence is closely balanced. But as to the issue under C, this is cited in a lot of cases for it, and this is under a lot of State cases that address this very issue. And what they say is that these terms, clue, pass, fail, test, are technical terms. Is there an entertain definition for the term clue? I don't think there's a common person definition for clue. This is a specialized term. You said you looked it up. What was the definition? Well, the clue is does this reveal something about his level of intoxication? Does a clue mean he's showing some level of intoxication based on something the officer observes? So I'm not objecting to the fact that the officer testifies to what he observed if he's not standing straight, if he's... So if he had said an indicator or an incident or an event instead of clue, you wouldn't be objecting now? Yeah, if he talked about coordination balance, which he did talk about. If he talked about coordination balance and ability to handle instructions, that would be admissible, and that doesn't fall under C. But when he says clue, test, pass, when he says four clues out of six on the HGM means a fail, what does that mean? How do we know that that's reliable? How do we know that that's believable? He's giving an order of credibility that it doesn't deserve. Two out of eight, not even 50% on the walk-in term, two out of four on the one-way test. Well, you already said this, so you may have something new. I do. Plain error. There's a lot of reasons for it. The opinions go to the ultimate issue in the case. That makes it highly prejudicial. Seven of four is not applicable because the evidence is inadmissible. The testimony came from respected police officers who a jury gives special weight and consideration to testimony from officers. The State emphasized the inadmissible testimony several times in closing argument. That increases the prejudicial effect. And a big point, the jury note. The jury note says, quote, we, quote, cannot agree on the DUI. So at least at some point there's a deadlock on it. One or more jurors were saying we vote to acquit. The evidence is closely balanced on prong one of the plain error rule. I would ask for reversal of the conviction on the DUI unless the Court has any more questions. Thank you very much. Thank you. You will have an opportunity to make rebuttals. Thank you. Thank you. Ms. Lee, you may proceed. Good morning, Your Honor. Good morning. This is Stephanie Lee from the State Council. Respectfully, we did receive an order on Friday allowing our motion to cite Cox. I was asking a question about the next case. For some reason I was thinking that a civil case was up now. So don't worry about it. Okay. I didn't know. Should I address Cox then? You don't need to. Okay. Thank you. I would first like to say that the State's position is there is more than sufficient evidence to show both actual physical control of this vehicle by the defendant as well as intoxication by the defendant. So you're conceding the fact that he may not have been proven to have been driving the vehicle so much as he was proven to be in control? Correct. Actual physical control. The officer, it was Lornan, asked where the keys were, and the defendant pointed them to the— said, I left them in the ignition. The defendant made several statements that would indicate he was, in fact, driving. However, we don't need an actual driving proof. Didn't he make some concessions on the way to the police station that his girlfriend is going to be angry at him for taking the car or whatever? His admissions were that it was her car and she was going to be angry that it was towed, is what he said. And he got very—that was adding to his belligerence, which was showing throughout this entire incident. From the time they were on the scene all the way to the police station, the defendant was acting in an extremely belligerent manner, which was part of the indications that he was, in fact, intoxicated. And we don't know, but is there an inference that Casey is not the girlfriend? It's—she admitted that he calls her his girl, but she denied that she was, in fact, his girlfriend. Her testimony, of course, that she was the one driving was completely incredible, and clearly the jury did not believe it, which they were given the opportunity to disbelieve it, and they did not. What I would like to address is this 701. Initially, I did, in fact, address 701 in my brief on page 17 and 18. I think that the case law is very clear that a witness, being a layperson or a police officer, who has sufficient experience observing individuals who are under the influence of alcohol, are, in fact, able to give an opinion about intoxication, not just say, this is what I saw, and allow the jury to decide what that means. In fact, I am aware of no case law out there that says that a lay witness can't use circumstantial evidence to arrive at the opinion that they're then allowed to give to the jury. It has to be something that they perceived in their own senses, which is true, and each of these officers did, in fact, say, I have that experience, I've seen those types of people, and my opinion, based on everything I saw and observed, is that he was intoxicated. The only witness that used the word clue was Lorden, and he is the one that, in fact, conducted those field sobriety tests, and was able to witness and watch and see and hear how he performed specifically as to those. I disagree that clue would in any way be a scientific word. On the other hand, Lorden did say that those tests were standardized by the National Health, Transportation, Safety Administration, I believe, HTSA. He testified to that. If you say that he was reading, how did he present the test to the defendant? My recollection is that he used a card. He testified that he used the cards to do so. However, even if that weren't the case, there's no evidence, nobody ever said he didn't do them the correct way. In fact, all of the other things that he saw would be his own, you know, he had bloodshot and glassy eyes. When I was doing these tests, that's what I observed. He was acting belligerent. He was unable to follow instructions. He was stumbling. He did smell of the alcohol. He did some weird thing when he was told that he was not following the direction about the one-legged stand test, that it was supposed to be more than two inches. He kicked it up to his waist and started flailing his arms around. So all of those things could lead a reasonable person of a lay witness to believe that this person was intoxicated. Lorden is the only one who testified about, again, the clues and how many there were, but he did testify he was using those standards. And then the only, I believe, my recollection is that fail only came up when the defense brought it up in cross-examination. They're the first ones that indicated anything about a failure. And so that, I mean, that's certainly invited error. If it's error at all, I don't think it is. I do think that they can say whether they, that's their opinion that they're presenting to the jury. And the reason it's helpful is that the jury doesn't actually see it. The jury hears what they're describing. The witness is then saying, this rose to the level, in my opinion, that it was intoxication. And that is proper lay opinion if they have the experience viewing intoxicated people very different from an evidence of a seizure, which maybe lay people would not be as experienced in. But again, you actually have the fact that Lorden was discussing that it was based on the standards that are used under that, for those tests. Again, I would just ask the court to remember that as to the admissibility of the opinions, we are talking about a plain error allegation here. There was no objection. So first there has to be some error, which there isn't. But even if there were, it has to rise to the level that it was so egregious and plain. For the same reasons that the evidence was more than sufficient is why it was also not closely balanced. Well, if the seminal issue is not correct, that he was not driving or, in your words, not in control of the vehicle, the evidence wouldn't be very close, would it? I'm sorry. I think that's what he's sort of pinning this on, that nobody saw him drive. But your position is that he was in control of the car. Correct. He was in actual physical control, which is sufficient to find DUI. And, again, he proved that by Lorden saw him walking away from the vehicle. He told them where the keys were. He actually did admit to driving, but certainly he had the ability to get in immediately and drive at that time, which is sufficient for actual control. Now, one thing he did say is he didn't say he thought he was on a roadway in a park and that's not driving on a public highway or something of that nature. How does that fit in here? Other than he says he was driving. Correct. How does it fit in for control on a public access? Well, we actually had the two officers that saw that particular vehicle go across a bike path, a pedestrian path. We also have Wild stated to the officers that she was afraid when they were doing those things. And when the defendant was doing it, well, whoever was driving, she knew that the driver was, in fact, the person that she met at the bar. She knew that for 100% sure. She said she was 75% sure in court that it was the defendant, and he matched the description. But we know that the male was the one that she said was driving. There was only one male anywhere on site. And, yes, when the defendant said, well, I just parked it there. How did he get it there? We know how he got it there. We know how he got it there because the officers saw it going, and Wild said that's how it got there as well. If the court has no further questions, we would stand on our brief and ask the court to adjourn. Thank you. Mr. Levin, you may proceed. Thank you, Your Honor. Justice Hutchinson, I'd like to answer one of your questions, and I wasn't able to. Commander Blauer has testified in a pretrial hearing, and this is at page R404. You know, he says, I was there primarily for safety purposes and did not make any observations about his sobriety at that time. So that's what I was referring to. So under A, he did not observe. He did not observe the driving. He did not observe the testing. So, therefore, he's not able to render an opinion under A. Well, Officer Blauer or Sergeant Blauer did see a vehicle that ended up on that island being driven on a bike path and pedestrian bridges, correct? Yes, and he brought the state to his bank, and inference upon inference. He saw that happen. He saw that car. Well, I think one of them said, do you see what I just saw? Look over there, because one of them had their back to the other, to the car, and they noticed the park being closed. They knew the park was closed. They see the car going, a car going on to the bike path. That's not as unusual as crossing the pedestrian bridge. But Blauer said that he gave his opinion because of how he performed on the testing. Okay. So he can't do that because he didn't see the testing. Okay. Going on to, I cited in my opening brief about clues. We've had some questions. There's a case that I cited, People v. Day. It's an Illinois case, 2016, citing a federal case called Horn. And basically they talked about how clues and failing the testing are scientific evidence. They said that that kind of testimony cloaks the opinion with unfair earned credibility. That's the term they use. At page 34 of my brief, I discuss that. And there's been discussion about what the officer observed as far as, you know, the defendant's behavior and so forth, the coordination, the driving onto the island and so forth. Well, that testimony is admissible. But the state made a jump and said, I'm going to, and the state asked the officers, do you have an opinion on the defendant's intoxication? Do you have an opinion on his ability to drive? And then the officers gave an opinion. And that kind of testimony is not admissible under A and B. As far as the state's cases cited in their brief, none of them deal with A or B or C. There's no analysis whatsoever over A or B or C. In fact, the cases the state cites are pre-2011 when 701 was enacted. They do cite Teterra, which I handled, actually. It's a 2018 case. And I know I didn't raise 701 in that case at all. And the opinion speaks for itself. So when the state says the officers had prior experience recognizing intoxication, that just doesn't address the issue. Did they personally observe the testing and the person driving? Did it assist or help to try or fact under B? We don't have any discussion on that either. And then C, with the discussion about clues and so forth, that's scientific testimony. That's not admissible under C. I cite a lot of cases in my brief on that. And then we have the jury note, which I think is very telling. They had a deadlock on the DUI. We can't reach a verdict on the DUI. We have a disagreement among us. And they did change their mind. So at least at one point, they were ready to, at least one or more jurors was ready to acquit. I think all those factors, plus they didn't have, when the state was talking about the issue about whether the officers actually saw the defendant driving, you know, whether he had the keys on him, well, that speaks to issue one, the reasonable doubt issue. But I think I want to emphasize that reasonable doubt is a lot different than closely balanced evidence. There's a very big distinction to be made. In a case like Cox, there's no application to this at all, except maybe to issue one. But it doesn't have any application to two because it doesn't deal with closely balanced evidence. The only issue raised was a reasonable doubt issue. So Cox is just not applicable. So unless the court has any further questions, I have nothing further, and I thank the court. What was the rationale for the arrest and judgment of the reckless driving charge? The arrest and judgment was on the reckless driving. They vacated that. You know, it's in the record. I recall for this oral argument that there were two convictions, one DUI, one for reckless driving. The reckless driving was vacated, so the only thing left for the appeal is the DUI. But I don't – I defer to the record. I don't recall the basis for the trial court granting the motion arrest and judgment. Was it possibly the fact that he very adroitly drove over a pedestrian bridge onto two, possibly three islands? Well, the rational jury, you know, it's possible to conclude that there was careful driving over the pedestrian bridge. Well, my point is if you were recklessly driving, you might be going 45 miles an hour over the pedestrian bridge instead of 15 or 20. Yes. It seemed to me from the record, although he went on the bridge, he was being very careful about it. Yes, exactly my point is. Yes. Okay, thank you. Thank you, Your Honors. We have another case on the call. We'll take the case under advisement. There will be a short recess.